UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 2:09-cr-00171-RLH-RJJ |
| | ) | |
| vs. | ) | REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| | ) | (Defendant's Motion to Suppress #25) |
| JAMAL MINOR, | ) | |
| Defendant. | ) | |

This matter came before the court for an evidentiary hearing on Defendant Jamal Minor's Motion to Suppress (#25). The Court has considered the Defendant's Motion (#25); the Government's Response (#27); and the Defendant's Reply (#28), as well as the testimony and evidence presented during the hearing.

### BACKGROUND

On April 22, 2009, a federal grand jury indicted Defendant Jamal Minor charging him with being a felon unlawfully in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Government also seeks the forfeiture of certain property from Garcia pursuant to 18 U.S.C. § 922(d)(1) and 28 U.S.C. § 2461©.

On January 25, 2007, Las Vegas Metropolitan Police Department (LVMPD) Officers Bertuccini and Knowles were in a marked car patrolling the area of Monroe Street and N Street in North Las Vegas, Nevada. At the time, the officers were members of LVMPD's mobile crimes saturation team, which "saturates" high crime areas with a police presence and engages in "proactive" police work.

At approximately 9:00 p.m., Bertuccini observed an oncoming vehicle with a front license mounting bracket but no front license plate. Bertuccini saw a black male driver and a black female

1  passenger in the vehicle. The officers turned around and began to follow the vehicle. Once behind
2  the vehicle, the officers requested a records check of the license plate number. Bertuccini testified
3  that the records check revealed that the registered owner of the vehicle had an outstanding warrant.
4  The records check also revealed the registered owner's name, date of birth, and race. The owner's
5  gender and race were consistent with Bertuccini's observations. Based on the lack of a front license
6  plate and the alleged outstanding warrant, the officers activated the patrol car's overhead lights and
7  sirens. The driver of the suspect vehicle immediately pulled over in a location where the vehicle was
8  illegally parked.

9  After the vehicle pulled over, Knowles approached the driver's side of the vehicle and spoke
10  with the driver and passenger. Bertuccini approached the vehicle on the passenger side. The driver
11  verbally identified himself as Jamal Minor.  He also produced valid identification confirming his
12  identity. The driver's stated name and identity was consistent with the outstanding warrant.
13  Accordingly, Minor was removed from the vehicle, placed in handcuffs, and escorted back to the
14  front of the patrol car. Because Minor was under arrest, Knowles conducted a pat down search.

15  Once Minor was placed in handcuffs at the front of the patrol car, Bertuccini asked the
16  passenger to exit the vehicle. She complied. Once she was out of the vehicle, Bertuccini conducted
17  a pat down search and then directed her to sit on the curb. At the time the passenger was placed on
18  the curb, Bertuccini testified that she looked very young and was "obviously" a juvenile. Bertuccini
19  was unable to recall whether he inquired as to the passenger's date of birth at the time she was
20  removed from the vehicle. There is nothing in the arrest report indicating that the passenger's age
21  or date of birth was obtained at the time she was removed from the vehicle or at anytime prior to or
22  during the search. The record is silent as to whether Bertuccini ever attempted to verify whether the
23  passenger had a driver's license. Bertuccini testified that at the end of the overall encounter he
24  discovered that the passenger was born in 1991.

25  After securing the passenger, Bertuccini asked Minor whether there was anything illegal in
26  the vehicle. Minor said no. Bertuccini then asked whether he could search the vehicle without
27  advising Minor that he had the right to refuse to consent. Minor was not presented with a consent
28  to search form. Although the timing is unclear, at some point during the conversation Bertuccini

1  advised Minor that his vehicle was going to be towed and the items inside would be inventoried.[1]
2  Minor was handcuffed during this entire conversation and was not given *Miranda* warnings. Minor
3  consented to the search. After obtaining consent, Knowles placed Minor in the patrol car behind the
4  driver's seat. Knowles then went and stood next to the passenger while Bertuccini searched the
5  vehicle.

6        Moments after beginning the search, Bertuccini found gun holster packaging in the vehicle.
7  The gun holster packaging described the gun holster as "ambidextrous" with an "in pants" clip.
8  Bertuccini testified that when he found the packaging he was immediately concerned that he or his
9  partner may have missed a weapon during the pat down searches of the vehicle occupants. After
10 finding the packaging, Bertuccini returned to the patrol vehicle and spoke with Minor. Bertuccini
11 asked why Minor had the holster packaging. Minor responded that his aunt had just purchased the
12 holster.

13       After speaking with Minor, Bertuccini returned to the vehicle to continue the search. He
14 went immediately to the glove box, which was locked. Bertuccini unsuccessfully attempted to open
15 the glove box with Minor's keys. Bertuccini then returned to the patrol car and asked Minor why
16 the glove box was locked. Minor responded that the key to the glove box was on the key ring. After
17 speaking with Minor, Bertuccini returned to the vehicle. He was unsuccessful in his second attempt
18 to open the glove box.

19       Unable to open the glove box with the keys, Bertuccini inserted a pen into the top of the
20 glove box and opened it slightly. Bertuccini shined his flashlight into the glove box and saw a
21 handgun in a holster inside. Bertuccini advised Knowles that there was a handgun in the glove box
22 and that the glove box was locked. At that point, Knowles attempted to open the glove box with his
23 Leatherman pocket knife while Bertuccini stood by the passenger seated on the curb. Knowles was
24 unsuccessful in his attempt to open the glove box. After Knowles failed attempt, Bertuccini made
25 a third attempt at opening the glove box. Bertuccini testified that at this point the glove box simply
26

---

27     [1] Bertuccini testified that he advised Minor that the vehicle would be inventoried after he obtained
28 the initial consent to search. The arrest report indicates that Bertuccini advised Minor that the vehicle would be searched and inventoried prior to obtaining consent to search the vehicle.

pulled open revealing a holstered, loaded handgun. The holster matched the holster packaging previously found in the vehicle. After clearing the firearm, Bertuccini approached Minor and gave him the *Miranda* warnings.

Minor requests that the Court suppress all evidence obtained during the search because (1) the consent to search was invalid and (2) the inventory search did not comply with LVMPD policy.[2] The Government argues that the request should be denied because (1) the consent was voluntary, (2) the evidence was seized pursuant to a valid inventory search, and (3) the search was independently justified for officer safety reasons.

## DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated." U.S. CONST. AMEND. IV. Subject to specifically established and well delineated exceptions, a search is presumed to be unreasonable if it is not supported by probable cause and conducted pursuant to a valid search warrant. *United States v. Ruckes*, 586 F.3d 713, 716-17 (9th Cir. 2009) (citing *United States v. Caseres*, 533 F.3d 1064, 1070 (9th Cir. 2008)). The government bears the burden of justifying a warrantless search. *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991) (citations omitted).

**1. Consensual Search**

A search conducted pursuant to consent is a well-defined exception to the Fourth Amendment's presumptive warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The Government bears the heavy burden of proving that consent is voluntary. *See e.g.*, *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009) (*citing United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2004) *cert. denied*, 543 U.S. 852). Whether consent is voluntary is determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 227. In the Ninth Circuit, courts must consider five factors in determining voluntariness:

---

[2] Minor's counsel also argued during the evidentiary hearing that there is no evidence indicating that a warrant for arrest actually existed. Bertuccini testified that Minor was arrested on a city warrant which was not confirmed because of the gun found during the vehicle search.

> (1) whether the [consenting individual] was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the [consenting individual] was notified that he had the right not to consent; and (5) whether the [consenting individual] was told a search warrant could be obtained.

*Brown*, 563 F.3d at 415 (citations omitted). "It is not necessary to check off all five factors, but 'many of [the Ninth Circuit's] decisions upholding consent as voluntary are supported by at least several of the factors.'" *Patayan Soriano*, 361 F.3d at 502 (quoting *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 n.3 (9th Cir. 1997)). Nevertheless, the factors serve as guideposts and are "not a mechanized formula to resolve the voluntariness inquiry." *Patayan Soriano*, 361 F.3d at 502 (citing *Schneckloth*, 412 U.S. at 224 (rejecting "talismanic definition of voluntariness mechanically applicable" to all situations)). No one factor is determinative. *United States v. Castillo*, 866 F.3d 1071, 1072 (9th Cir. 1989).

Here, after initiating the traffic stop, the officers confirmed Minor's identity and immediately arrested him. After his arrest, Minor was placed in handcuffs and seatbelted in the back of the patrol car. Minor was placed in the patrol car prior to the conversation with Officer Bertuccini wherein he allegedly consented to the search of his vehicle. There is no dispute that Minor was in custody prior to giving consent to search the vehicle. The officers did not have their guns drawn when Minor was arrested.

Officer Bertuccini testified that Minor was not given the *Miranda* warnings. The Ninth Circuit has questioned the significance of giving the *Miranda* warnings in determining whether consent was voluntary, *see United States v. Perez-Lopez*, 348 F.3d 839, 846-847 (9th Cir. 2003) ("[i]t is open to question ... whether the inclusion or exclusion of Miranda warnings in a given set of circumstances should weigh much in either direction in considering voluntariness."), but has not eliminated the inclusion or exclusion of the *Miranda* warnings as a relevant factor in circumstances where the consenting individual is in custody. *See e.g*, *Patayan Soriano*, 361 F.3d at 504 (absence of *Miranda* warnings inapposite where consenting individual is <u>not</u> in custody) (citations omitted). Accordingly, when a consenting individual is in custody at the time consent is obtained, as here, the absence of *Miranda* warnings remains a viable factor for consideration. Additionally, Minor was not told he had the right to refuse to consent either verbally or through a written consent form.

"Knowledge of the right to refuse consent is highly relevant in determining whether a consent is valid." *United States v. Childs*, 944 F.2d 491, 496 (9th Cir. 1991) (citing *United States v. Mendenhall*, 446 U.S. 544, 558-59 (1980)).

Whether Minor was told that a search warrant could be obtained prior to his consent is unclear. The arrest report, filled out virtually contemporaneously with the events, provides that "Bertuccini asked Minor if there were any weapons or anything illegal in the vehicle, prior to officers entering the vehicle for the vehicle inventory." *See* Exhibit A attached to Defendant's Motion (#25). The report further states that "Minor stated that there was nothing illegal in the vehicle and also granted the officers consent to search the vehicle." *Id*. Based on this language, Minor argues that the officer's had asserted an independent right to search the vehicle, which further supports a finding that his consent was involuntary. During the hearing, Bertuccini testified that the arrest report was inartfully drafted and that he actually advised Minor that the vehicle's contents would be inventoried after obtaining consent. Approximately three (3) years passed between the night of the encounter and Bertuccini's live testimony. As time passes memories fade, which is, of course, a primary reason why law enforcement personnel prepare arrest reports. The Court has determined to assign more credibility to the language of the arrest report filled out by Bertuccini than to his live testimony given three years after the incident. Thus, the Court finds, consistent with the arrest report, that Minor was informed that his vehicle would be inventoried prior to giving his consent.[3]

After review, the Court finds that the relevant factors indicate that Minor did not voluntarily consent to a search of his vehicle. He was in custody, not given *Miranda* warnings, not told he had the right to refuse consent, not given a written waiver, and informed that the vehicle would be searched for inventory purposes prior to consent. Accordingly, the Government has not met its burden to show the consent was voluntary. Because consent was not voluntarily given, it is not necessary to address the issue of whether the search exceeded its permissible scope.

**2. Inventory Search**

Inventory searches are also a well-defined exception to the warrant requirement. *Colorado*

---

[3] Even if the court credited Bertuccini's testimony in court, the conclusion regarding whether consent was voluntary would not change.

- 6 -

1  *v. Bertine*, 479 U.S. 367, 371 (1987).  Once a vehicle has been impounded, the police may conduct
2  an inventory search.  *South Dakota v. Opperman*, 428 U.S. 364, 369 (1975).  The purposes of an
3  inventory search are threefold: (1) the protection of the vehicle owner's property; (2) the protection
4  of police against claims by the owner; and (3) the protection of the police from potential danger.
5  *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989) (citation omitted).  "In order to ensure
6  that the inventory search is 'limited in scope to the extent necessary to carry out the caretaking
7  function,' it must be carried out in good faith and in accordance with the standard procedures of the
8  local police department.  *Wanless*, 882 F.2d at 1463 (quoting *Opperman*, 428 U.S. at 375); *see also*
9  *Colorado v. Bertine*, 479 U.S. 367, 374 n. 6 (1987) ("reasonable police regulations relating to
10 inventory procedures administered in good faith satisfy the Fourth Amendment").  "[A]n inventory
11 search must not be a ruse for general rummaging in order to discover incriminating evidence."
12 *Florida v. Wells*, 495 U.S. 1, 4 (1990).  At the close of the evidentiary hearing, the Government
13 argued that this case comes down to whether there was a valid vehicle inventory search.  According
14 to the Government, if the vehicle impound and inventory were appropriate, the discovery of the
15 evidence was inevitable and should not be suppressed, even if the consent search is invalid.

16  "The inevitable discovery doctrine is an exception to the exclusionary rule."  *Ruckes*, 586
17 F.3d at 718 (*quoting United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986)).  The doctrine
18 allows the government to rely upon evidence that ultimately would have been discovered absent a
19 constitutional violation.  *Nix v. Williams*, 467 U.S. 431, 443 (1984).   As the Supreme Court
20 explained in *Nix*, "[i]f the prosecution can establish by a preponderance of the evidence that the
21 information ultimately or inevitably would have been discovered by lawful means[,] ... then the
22 deterrence rationale [for the exclusionary rule] has so little basis that the evidence should be
23 received."  467 U.S. at 444.  Here, the court must determine (1) whether the inventory search was
24 valid and, if so, whether the gun and gun holster would have been uncovered during the inventory
25 search.

26  In order to determine the validity of the inventory search,  the court looks to the standard
27 procedures set forth in LVMPD's inventory policy to discern whether the police complied with the
28 written procedures.  LVMPD's vehicle inventory policy provides as follows:

> An inventory is not a search for evidence of crime, but is justified to protect an owner's property while it is in custody of the police, to ensure against claims of lost or stolen property, and to guard the police from danger.
>
> When a vehicle is lawfully impounded. . . , an officer shall conduct an inventory search of that vehicle and containers found therein and report all personal property on the LVMPD 503, Vehicle Impound Report. If the inventory is part of a vehicle seizure. . . , the personal property will be impounded and placed in the evidence vault.
>
> The impound/inventory involves two levels of decision making and action by the officer. There is the impoundment of the vehicle and the inventory search itself. <u>Both</u> of these actions must be done pursuant to standardized criteria which limits the discretion of the officer and ensures that impoundment/inventory are legally performed and not a guise for a general exploratory search.

*See* Exhibit 2 (emphasis added). As indicated, determining whether this particular inventory search complied with department policy requires a two-part inquiry. First, was the vehicle properly impounded. Second, was the inventory search properly performed. <u>Both</u> of these actions must be performed consistent with LVMPD's standardized criteria, which limits an officer's discretion.

An impound policy vesting an officer with discretion to choose between impounding a vehicle or not, does not render the policy or the officer's choice unconstitutional. *See Bertine*, 479 U.S. at 375 (department regulations which give police officers discretion to choose between impounding a vehicle or not impounding a vehicle are not improper so long as police discretion is exercised "according to standard criteria and on the basis of something other than suspicion of criminal activity"). Under LVMPD's impound policy, vehicles may <u>only</u> be impounded in specified circumstances. Government's Exhibit 4 presented at the evidentiary hearing. The police need only demonstrate that they can meet one of the specified circumstances for impounding a vehicle. *See Diomampo v. State*, 185 P.3d 1031, 1043 (Nev. 2008) (finding that the failure to attempt to contact the registered owner did not invalidate an impoundment supported by other department regulations).

Here, the only potentially viable circumstance, as specified by LVMPD's policy, is that "[i]f there is not a licensed driver in the vehicle and it is not legally parked" impoundment is appropriate. *See* Government's Exhibit 4 presented at the evidentiary hearing. This language "limits the discretion of the officer" to ensure that an impoundment/inventory search is not a guise for a general exploratory search. Government's Exhibit 2 presented at the evidentiary hearing. The language also dictates which party bears the burden to establish the legality of an impound and inventory search.

1    It is the government's burden to demonstrate that "there is not a licensed driver in the vehicle." It
2    is not a defendant's burden to demonstrate that there was a licensed driver in the vehicle.
3    Additionally, the government must establish that the vehicle was parked illegally. There is no
4    credible dispute regarding whether the vehicle was parked illegally upon being stopped–it was. The
5    initial question is whether the officers complied with LVMPD's written requirement to determine
6    whether there was a licensed driver in the vehicle prior to the impound. If not, the impound was
7    inappropriate and the inquiry ends.

8          Bertuccini testified that, at the time Minor was removed from the vehicle and arrested, the
9    officers were unable to identify any individuals in the vehicle who had a driver's license. This
10   testimony was based solely on Bertuccini's observation that the passenger looked "very, very young"
11   probably in "her early teens." Although Bertuccini removed the passenger from the vehicle and
12   frisked her, there is nothing in the record showing that he made any inquiry regarding whether she
13   had a driver's license. The court acknowledges that circumstances may exist where the failure to
14   determine whether an individual has a driver's license could still be considered a good faith
15   application of LVMPD's impound policy. For example, there is obviously no reason to ask an infant
16   or a toddler whether he or she has a driver's license. Nevertheless, an officer's subjective
17   determination that an individual "looks" young, and his speculation that the individual is in "her
18   early teens" hardly qualifies as a good faith application of a policy specifically designed to limit the
19   officer's discretion in such circumstances. It gives police officers unbridled discretion to make
20   subjective determinations regarding age and greatly increases the likelihood that inventory searches
21   will be used as a guise for exploratory searches. LVMPD's policy specifically attempts to avoid this
22   evil by expressly requiring that an impound decision be made pursuant to standardized criteria.

23         Here, aside from the officer's testimony regarding his subjective opinion of the passenger's
24   age, the Government has put forth no evidence establishing that the passenger did not have a driver's
25   license. This is especially troubling in light of the fact that, at the end of the encounter, the officers
26   did determine that the passenger was born in 1991. Once the officers determined the passenger's
27   year of birth, any subjective opinion about how young she looked gave way to the possibility that
28   she was of driving age. Yet, even after obtaining the passenger's year of birth, the officers still

neglected to make any inquiry into whether she had a driver's license. Under the circumstances, LVMPD's impound and inventory policy requires more.

Accordingly, the court finds that the government has failed to meet its burden of establishing that the impound decision was made in good faith conformity with local police procedures. Because the court finds the vehicle was not lawfully impounded, it does not reach the question of whether the inventory search exceeded its permissible scope.[4]

## RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the Defendant Jamal Minor's Motion to Suppress (#25) **GRANTED**.

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court on or before March 26, 2010.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 11th day of March, 2010.

ROBERT J. JOHNSTON
United States Magistrate Judge

---

[4] The Government raised an additional argument in its brief that discovery of the gun holster packaging gave the officers reasonable suspicion to expand the search into any area where a firearm might be found, and provided an independent ground to search the glove box. The court rejects this argument. Because the vehicle was not lawfully impounded, the entire inventory search was improper, not just the search of the glove box. The Court also rejects the Government's attempt to expand the holding in *Arizona v. Gant*, 129 S. Ct. 1710. A search warrant should have been obtained.